IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BRENDA WATERMAN, and | § | |
| INGA PEARSON | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 9:05-CV-109 |
| v. | § | |
| | § | |
| COX TEXAS NEWSPAPERS, LP d/b/a | § | JUDGE RON CLARK |
| THE LUFKIN DAILY NEWS | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT PARTIAL SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment [Doc. # 13].  Responses and Replies have been filed.  Defendant argues that Plaintiffs are not due overtime pay because they fall within an exemption to the overtime pay requirements of the Fair Labor Standards Act.  Because Plaintiff Waterman at all relevant times was a district manager for the Lufkin Daily News and she regularly delivered newspapers containing circulars from out of state, she falls under an exemption to the overtime pay requirements of the Fair Labors Standards Act.  Plaintiff Pearson was not always a district manager and so her duties did not always require her to deliver newspapers.  She only falls under the exemption from the overtime pay requirements for the time period while she was a district manager.  Defendant's motion, then, is granted as to Plaintiff Waterman and granted in part as to Plaintiff Pearson.

**I. Facts**

Plaintiffs and Defendant agree on most of the material facts in this case.  Plaintiff Waterman and Plaintiff Pearson began work at the Lufkin Daily News ("Newspaper") in May

1

2002 and July 2002 respectively.  At all times relevant to this law suit Plaintiff Waterman was a district manager for the newspaper.  Plaintiff Pearson, however, was not a district manager between July 2002 and November 7, 2003.  As district managers Plaintiffs were assigned delivery routes to monitor.  If, for whatever reason, a paper was not delivered by the carrier or there was no carrier for a particular route, they would then have to deliver the paper.  It is undisputed that the delivered papers contained supplements of advertisements or circulars approximately five days a week, which were shipped to the newspaper from outside of Texas.  The Newspaper received these supplements in complete form and preformed no processing work on the supplements.

The factual dispute in this case is over how often the Plaintiffs delivered the paper and if delivery was only a duty assigned to Plaintiffs on some weeks.  Plaintiffs submitted an Affidavit from Plaintiff Pearson detailing when she believed she delivered papers and Defendant supplemented its summary judgment motion with voucher forms detailing when the Plaintiffs asked for reimbursements for delivering papers.  Plaintiff Waterman provided no evidence on how often she delivered papers.[1]

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

---

[1]Subsequent to Defendant's Summary Judgment Motion, Plaintiffs filed a motion for leave to amend.  In a separate order, this court has granted Plaintiffs' motion to add two new claims. These claims were not addressed in Defendant's motion and are not addressed in this order.

Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to  "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to avoid summary judgment, the  party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986);  *Anderson*, 477 U.S. at 257.  The nonmoving party  "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586.   Fed. R. Civ.  P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256.  Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment.  *Anderson*,  477 U.S. at 248.  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue.  *Id.*  If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor.  *Matsushita*, 475 U.S. at 587.

3

However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468 (1992).

## III. Analysis

### A. Defendant's Exemption Claim

Plaintiffs seek to recover their unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), for the immediate three year period proceeding the filing of this suit on May 10, 2005.  Defendant argues that section 29 U.S.C. § 213(b)(1) of the FLSA provides an applicable exemption to the general rule under 29 U.S.C. § 207 that workers covered by the FLSA are entitled to overtime wages for hours worked over forty in a work week. "[E]xemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Kanowsky*, 361 U.S. 388, 392 (1960).  Defendant bears the burden of establishing that Plaintiffs fit within the claimed exemption.  *Id.* at 394 n.11.

29 U.S.C. § 213(b)(1) states that the overtime provisions of the FLSA do not apply to an "employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of 31502 of Title 49 ["Motor Carrier Act"]."  29 U.S.C. § 213(b)(1).[2]  49 U.S.C. § 31502 states that it applies to transportation described in 49 U.S.C. § 13501 and that the Secretary of Transportation has the

---

[2] Regardless of whether any regulations have been established by the Secretary, if an employee comes within the Secretary of Transportation's power to regulate, then he is excluded from the benefits of section 207 of the FLSA.  *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42 (5th Cir. 1962). The Secretary need only have the authority to regulate for the exemption to be applicable.  *Id.*

authority to prescribe requirements for employees of a private motor carrier when needed to promote safety of operation.  49 U.S.C. § 31502 (a),(b).[3]

Under 49 U.S.C. § 13501, the Secretary of Transportation has jurisdiction over transportation by a motor carrier to the extent that property is transported by the motor carrier in interstate commerce.  *See* 49 U.S.C. § 13501(1)(A).  Transportation in interstate commerce includes transportation within a state "that is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders on contracts are being filled."  *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943).  "It is elemental that a carrier is engaged in interstate commerce when transporting goods either originating in transit from beyond Texas or ultimately bound for destination beyond Texas, even though the route of a particular carrier is wholly within one state."  *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976).

Furthermore, "[t]he work of an employee who is a full-duty or partial duty "driver". . . directly affects "safety of operation" within the meaning of section 204 of the Motor Carrier Act [49 U.S.C. § 31502] whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of the act."  29 C.F.R. § 782.3(b) *citing to Levinson v. Spector Motor Service*, 330 U.S. 649, 674-76 (1947).

Here, it is not disputed that the paper contains supplements that come from outside of Texas, and that these supplements, along with the paper, are delivered in Texas by the Newspaper's employees. The transportation in Texas of the supplements is the practical

---

[3] Plaintiffs do not dispute that Defendant is a private motor carrier who employed Plaintiffs.

5

continuity of movement from the supplier outside the state to the customer in the state. Moreover, because Plaintiff Waterman and Plaintiff Pearson drove motor vehicles in interstate commerce to deliver papers, their driving affected the safe operation of motor vehicles in interstate commerce.  While delivering papers, then, Plaintiffs fell under the authority of the Secretary of Transportation.

This conclusion is supported by the Administrator of the Wage and Hour Division's interpretations on the applicability of the exemption under 29 U.S.C. § 213(b)(1) to newspaper employees.[4]  In relevant part, the Administrator's interpretations as written in a handbook state that if out of state supplements are obtained in complete form and no processing work is done on them, the movement within a state is the practical continuity of the movement of goods from the point of origin to the point of destination.  Field Operations Handbook § 24d00. "Thus, the section 13(b)(1) [29 U.S.C. § 213(b)(1)] exemption is applicable to the delivery drivers who transport and deliver the newspaper containing the supplements." *Id.*

## B. Plaintiffs' claim to overtime on weeks when they did not deliver papers

Plaintiffs' argue that even if they are not entitled to overtime pay on the weeks when they delivered papers, they are entitled to it on the weeks when they did not deliver papers.  Plaintiffs' authority for this proposition is 29 C.F.R. § 782.2(3)-(4).  The portion of 29 C.F.R. § 782.2(3) that Plaintiffs rely on states that if in a particular workweek, an employee has other duties assigned to him which result in his performance of activities directly affecting the safety of

---

[4]The Department of Labor is responsible for the non-judicial enforcement and interpretation of the FLSA and it does this through the Administrator of the Wage and Hour Division. 29 U.S.C. § 204.  While these interpretations are not binding on the courts, they can provide guidance.  29 C.F.R. § 782.0(b).

operation of motor vehicles, the exemption is only applicable on those workweeks, but not the ones where he continues to perform the duties of the non-safety affecting job. 29 C.F.R. § 782.2(3).

The general rule given by the regulations, which Plaintiffs do not address, is that if bona fide duties of the job performed by the employee are such that she is or is likely to be called upon in the ordinary course of her work to perform safety-affecting activities (like driving), then the exemption applies. 29 C.F.R. § 782.2(3). This rule applies regardless of whether an employee happens not to perform any work directly affecting safety of operation in a particular work week. *Id.*

The evidence before the court reflects that it was part of Plaintiffs' bona fide duties to deliver papers and that delivery of papers was not some other duty assigned to Plaintiffs on some weeks. Defendant has provided affirmative proof that it was a continuing responsibility of the job of district manager to deliver news papers when a route was down or when newspapers had to be redelivered. On days when Plaintiffs delivered papers, they submitted reimbursement requests in the form of vouchers for the costs incurred in delivering papers on that day. Defendant supplemented its summary judgment motion with these vouchers. The number of vouchers Plaintiffs submitted over the period in question, show that Plaintiffs delivered the papers on a regular basis and that delivery was not just an occasional duty. Plaintiffs do not dispute the authenticity of these vouchers. The only evidence provided by Plaintiffs to rebut this affirmative showing is the mere conclusory remark given by Plaintiff Pearson that it was not part of their planned job to deliver papers. In the face of Defendant's evidence, consisting of Plaintiffs' own requests for reimbursement, Plaintiffs' mere conclusory remark without more is

7

not enough to create a genuine issue of material fact on the issue of whether the delivery of papers was an "other duty" assigned to them just on some weeks.  *See Anderson*, 477 U.S. at 248.

Plaintiffs also cite to 29 C.F.R. §782.2(4), which states that an employee of a private carrier who is not required to engage regularly in safety-affecting activities, and only occasionally or sporadically engages in such activities, falls under the exemption only for the dates on which he engages in such activity.  29 C.F.R. 782.2(4).  Plaintiffs do not provide any case law to support an argument that this provision would apply to them.  In *Wirtz v. C&P Shoe Corp*, the Fifth Circuit discussed employees who were only engaged in occasional and sporadic safety-affecting activities. 336 F.2d 21, 29 (5th Cir. 1964).  The employees in *Wirtz* only drove in interstate commerce once or twice a month, and in some cases only three times in two years.  *Id.* at n.9.  The Court held that these occasional activities affecting interstate commerce by the employees were negligible and were not of a safety affecting character; thus the exemption did not apply.  *Id.*

Here, the evidence before the court establishes that Plaintiffs delivered papers more than "occasionally" as found in the *Wirtz* case.  Her own voucher requests show that Plaintiff Waterman delivered papers almost daily.  She has not provided any competent summary judgment evidence to create a genuine issue of material fact as to how often she delivered the papers.  Plaintiff Pearson provides a list of dates on which she says she did not deliver papers.  She does not dispute that on those dates not listed, she delivered papers.  The reimbursement vouchers, discussed above, show that Plaintiff Pearson requested additional pay for delivery costs on over 200 days during the period in question.  Plaintiff Pearson's present assertion of dates of non-delivery conflict with the vouchers she submitted at the time.  Even if a fact finder was to

8

believe Pearson attempted to defraud her employer by submitting some extra vouchers, and that

her present list of delivery dates is correct, it is uncontested that she delivered papers on over 180

days.  The evidence submitted by both sides, then, shows that she delivered newspapers more

than two or three times a month.

Therefore, summary judgment for Defendant is granted as to Plaintiff Waterman's

overtime claims, and Plaintiff Pearson's overtimes claims while she was a district manager.  The

only two other published opinions dealing with similar facts have reached the same result.  *See*

*Webb v. Athens Newspapers, Inc.,* 999 F. Supp. 1464, 1473 (M.D. Ga. 1998); *Barron v. Lee*

*Enterprises, Inc.,* 183 F.Supp.2d 1077, 1088 (C.D. Ill. 2002).

### C. Plaintiff Pearson's claim to overtime benefits before becoming a district manager

Defendant does not address the period of time during which Plaintiff Pearson was not a

district manager.  Plaintiff Pearson presents an affidavit stating that for a time she was a single

copy manager, and as a single copy manager she was not required to, nor did she, deliver papers.

Defendant has not advanced any argument or any reason why an exemption to the FLSA would

apply while Plaintiff Pearson was a single copy manager and not delivering papers.  Therefore,

the court finds that Defendant's motion should be denied as to Plaintiff Pearson's claim to

overtime wages prior to November 7, 2003.

### IV. Conclusion

As district managers, both Plaintiffs fell under the power of the Secretary of

Transportation, and the Motor Carrier Act exemption to the FLSA requirements of overtime pay.

Plaintiff Pearson, however, was not always a district manager, and there is no showing that she

fell under the power of the Secretary of Transportation prior to becoming a district manager.

This case, then, will proceed on Plaintiff Pearson's claim to overtime, and Plaintiffs' recently amended claims under the Equal Pay Act, 29 U.S.C. § 206(d), and Plaintiff Pearson's claim for retaliation under 29 U.S.C. § 215(a)(3).  A Scheduling Order, which will control the disposition of this action, will be issued.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment **[Doc. # 13]** is **GRANTED IN PART** and **DENIED IN PART**.

So **ORDERED** and **SIGNED** this **21** day of **November, 2005.**


_____
 Ron Clark, United States District Judge